# Exhibit A
# State Court Pleadings

| | |
|---|---|
| COUNTY OF AIKEN | IN THE COURT OF COMMON PLEAS |
| CYNTHIA SEAY HOLDER & JAMES ANDREW HOLDER,<br><br>Plaintiff(s)<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, INC., d/b/a AMERICA'S SERVICING COMPANY,<br><br>Defendant(s) | CIVIL ACTION COVERSHEET<br><br>2008-CP-02-1592 |

(Please Print)

Submitted By: David A. Maxfield        SC Bar #: 7163

Address: 1701 Richland Street, Columbia, SC 29201

Telephone #: (803) 799-6000

Fax #: (803) 799-6947

Other:

E-mail: dave@trotterandmaxfield.com

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.   ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

**Contracts**
- ☐ Constructions (100)
- ☐ Debt Collection (110)
- ☐ Employment (120)
- ☐ General (130)
- ☐ Breach of Contract (140)
- ☐ Other (199)

**Torts - Professional Malpractice**
- ☐ Dental Malpractice (200)
- ☐ Legal Malpractice (210)
- ☐ Medical Malpractice (220)
- ☐ Notice/ File Med Mal (230)
- ☐ Other (299)

**Torts – Personal Injury**
- ☐ Assault/Slander/Libel (300)
- ☐ Conversion (310)
- ☐ Motor Vehicle Accident (320)
- ☐ Premises Liability (330)
- ☐ Products Liability (340)
- ☐ Personal Injury (350)
- ☐ Wrongful Death (360)
- ☐ Other (399)

**Real Property**
- ☐ Claim & Delivery (400)
- ☐ Condemnation (410)
- ☐ Foreclosure (420)
- ☐ Mechanic's Lien (430)
- ☐ Partition (440)
- ☐ Possession (450)
- ☐ Building Code Violation (460)
- ☐ Other (499)

**Inmate Petitions**
- ☐ PCR (500)
- ☐ Mandamus (520)
- ☐ Habeas Corpus (530)
- ☐ Other (599)

**Judgments/Settlements**
- ☐ Death Settlement (700)
- ☐ Foreign Judgment (710)
- ☐ Magistrate's Judgment (720)
- ☐ Minor Settlement (730)
- ☐ Transcript Judgment (740)
- ☐ Lis Pendens (750)
- ☐ Other (799)

**Administrative Law/Relief**
- ☐ Reinstate Driver's License (800)
- ☐ Judicial Review (810)
- ☐ Relief (820)
- ☐ Permanent Injunction (830)
- ☐ Forfeiture-Petition (840)
- ☐ Forfeiture—Consent Order (850)
- ☐ Other (899)

**Appeals**
- ☐ Arbitration (900)
- ☐ Magistrate-Civil (910)
- ☐ Magistrate-Criminal (920)
- ☐ Municipal (930)
- ☐ Probate Court (940)
- ☐ SCDOT (950)
- ☐ Worker's Comp (960)
- ☐ Zoning Board (970)
- ☐ Administrative Law Judge (980)
- ☐ Public Service Commission (990)
- ☐ Employment Security Comm (991)
- ☐ Other (999)

**Special/Complex /Other**
- ☐ Environmental (600)
- ☐ Automobile Arb. (610)
- ☐ Medical (620)
- ☐ Other (699)
- ☐ Pharmaceuticals (630)
- ☒ Unfair Trade Practices (640)
- ☐ Out-of-State Depositions (650)
- ☐ Sexual Predator (510)

COPY
ORIGINAL FILED
SEP 19 2008
AIKEN COUNTY
CLERK OF COURT

SCCA / 234 (04/08)

Page 1 of 3

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Allendale, Anderson, Beaufort, Colleton, Florence, Greenville,
Hampton, Horry, Jasper, Lexington, Pickens (Family Court Only), and Richland

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR.
Failure to do so may affect your case or may result in sanctions.**

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF AIKEN | SECOND JUDICIAL CIRCUIT |
| CYNTHIA SEAY HOLDER, & JAMES ANDREW HOLDER | C/A # 2008-CP-02-1592 |
| Plaintiff(s), | **SUMMONS** |
| vs. | |
| WELLS FARGO HOME MORTGAGE, INC., D/B/A AMERICA'S SERVICING COMPANY, | COPY ORIGINAL FILED SEP 1 9 2008 AIKEN COUNTY CLERK OF COURT |
| Defendant(s). | |

TO:   The Defendants above named:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, of which a copy is hereby served upon you, and to serve a copy of your Answer to said Complaint on the subscriber, Dave Maxfield, Esquire, 1701 Richland Street, Columbia, South Carolina, 29201, within THIRTY (30) DAYS after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

TROTTER & MAXFIELD, ATTORNEYS

By: _____
Dave Maxfield, Esquire
1701 Richland Street
Columbia, South Carolina
(803) 799-6000

DATED: September 17, 2008

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF AIKEN | SECOND JUDICIAL CIRCUIT |
| Cynthia Seay Holder & James Andrew Holder, | 2008 - CP - 02 - 1592 |
| Plaintiff(s), | **COMPLAINT** |
| vs. | (Jury Trial Requested) C O P Y |
| Wells Fargo Home Mortgage, Inc., d/b/a America's Servicing Company | ORIGINAL FILED |
| Defendants(s | Sept 19, 2008 8:30 |
| | AIKEN COUNTY CLERK OF COURT |

Plaintiffs, complaining of the Defendant above named, would show as follows:

1. Plaintiffs are citizens and residents of the County of Aiken, state of South Carolina.

2. Upon information and belief, Defendant Wells Fargo Home Mortgage, Inc., d/b/a America's Servicing Company ("ASC") is a corporation organized under the laws of the State of Delaware, but owning substantial property and transacting business in Aiken County.

3. This court has jurisdiction over the parties and subject matter of this action, and venue is proper.

4. Plaintiff Cynthia Holder ("Plaintiff") owns a home located at 205 Jordan Loop, Wagener, South Carolina, which she built with her late husband approximately 24 years ago.

5. Plaintiff James Andrew Holder ("James") is the son of Cynthia; as a result of a previous accident, he is disabled and confined to a wheelchair; James resides in the home with his mother, and attends school.

6. On or about August 5, 2005, Plaintiff filed for relief under Chapter 13 of the United States Bankruptcy Code.

7. Among the debts scheduled by the Plaintiff and treated by her plan was her home; the mortgage upon her home was serviced by Defendant ASC.

8. Defendant ASC was thus responsible for, *inter alia*, all escrow items with respect to the home, including taxes and insurance.

9. On July 23, 2007, a water pipe in the home burst, causing substantial water damage.

10. Immediately thereafter, Plaintiff contacted her homeowner's insurer, Nationwide, who in turn contacted a company known as ServPro of Aiken, which performed limited mitigation work in the home and provided an estimate of the cost of repairs to Nationwide.

11. Nationwide reviewed the ServPro estimate and on August 8, 2007, forwarded to ServPro a check for $14,890.06 to cover the completed mitigation work as well as the estimated repairs.

12. Nationwide made the check jointly payable to the Plaintiff, ServPro, and ASC.

13. Upon receipt of the check, ServPro contacted ASC about negotiating the

check so that the repairs could begin.

14. ASC instructed the Plaintiff and ServPro to endorse the check and forward it by overnight carrier to the Loss Draft Department, which is responsible for handling insurance benefits. ASC indicated the processing time for return of the funds would be "three to five days."

15. On August 28, 2007, ServPro overnighted the check, bearing the two required three endorsements to ASC.

16. Over the next month or so, ServPro and Plaintiff contacted Defendant multiple times at its Loss Draft Department. During these communications, ASC expressly acknowledged receipt of the funds. However, instead of returning them as required, however, ASC repeatedly asked for additional information or paperwork that had not been mentioned previously.

17. ASC also promised on at least one additional occasion that it would process and forward the funds in three to five days. These promises did not come to fruition.

18. In October 2007, the Plaintiff asked for the assistance of her bankruptcy attorney in obtaining the promised funds. Although ASC had notice of counsel's representation in this case, its agents initially refused to communicate with the attorney until the Plaintiff gave written authorization.

19. Thereafter, the Plaintiff's bankruptcy counsel obtained and forwarded that authorization, but ASC still declined to communicate, indicating the

authorization was not yet in its system.

20. Plaintiff's bankruptcy counsel then forwarded a second authorization, which ASC ultimately acknowledged. However, the pattern of demands for additional information continued. ASC demanded a death certificate for the Plaintiff's husband, who was initially on the account but had died some ten years earlier – even though the Plaintiff had previously provided a death certificate to Defendant's predecessor in interest in connection with the probate of his estate.

21. ASC also indicated that if it were to release the funds, it would not do so immediately but would remit three partial payments as the work progressed.

22. At this point the Plaintiff concluded the matter required the assistance of the United States Bankruptcy Court, and filed a Motion to Use Cash Collateral, which the United States Bankruptcy Court granted on December 7, 2007.

23. The aforementioned order required that ASC "shall forthwith remit the previously paid benefits in the amount of $14,890.06 to the Plaintiff's attorney."

24. On December 9, the Bankruptcy Noticing Center served the Order Authorizing Use of Cash Collateral on Defendant's agent.

25. Thereafter, on December 28, Plaintiff's bankruptcy counsel served the order on the manager of the Loss Draft Department by facsimile and by certified mail with restricted delivery and further indicated that he would

seek contempt sanctions if the manager refused to forward the funds. Receipt of this correspondence was acknowledged by ASC on January 4, 2008.

26. Nevertheless, despite actual written notice, ASC continued to refuse to comply with the aforementioned order. As a result, Plaintiff's bankruptcy counsel filed a Motion for Contempt in United States Bankruptcy Court on February 12, 2008.

27. On or about March 26, 2008, the United States Bankruptcy Court found Defendant ASC to be in willful contempt for its failure to endorse and forward the $14,890.06 check intended for the repair of Plaintiff's home, and sanctioned ASC for "blatantly" disregarding the Court's directives.

28. Although declining to decide the issue of Plaintiff's actual damages, the Bankruptcy Court expressly found that, in the approximately nine (9) months in which ASC had failed and refused to return the insurance check, that conditions at the Plaintiff's home worsened. Among other things, the Court found that:

   a. Water damage had spread and mold had become a serious problem;

   b. Plaintiff had been unable to occupy her bedroom for eight months and therefore had been sleeping on a couch;

   c. Bedroom furniture had remained in Plaintiff's kitchen [which Plaintiff could not use at all]; and,

   d. That Plaintiff's kitchen cabinets were "rotting."

## FOR A SECOND CAUSE OF ACTION

### (Unfair Trade Practices)

36. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

37. The activities of the Defendant constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

38. The actions of the Defendant, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

39. The actions of the Defendant have a real and substantial potential for repetition and affect the public interest.

40. The Plaintiffs has suffered an ascertainable loss due to the unlawful actions of the Defendant, entitling Plaintiffs to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION

### (Interference with Prospective Contractual Relations)

41. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent herewith.

42. The Defendant herein interfered with the potential contractual relations of

Plaintiff in her need for and employment of a repair compoany.

43. The interference by Defendant with potential contractual relations was committed for an improper purpose or by improper methods, including but not limited to Defendant's intention to retain or divert Plaintiff's funds.

44. As a direct and proximate result of the negligent, grossly negligent, willful, intentional and malicious acts of the Defendant, all in reckless disregard of the rights of the Plaintiffs, Plaintiffs suffered injury through the loss of credit, opportunity, and reputation in the community, the emotional stress associated with the foregoing, and such other damages as may be proven at trial.

45. Due to the acts of the Defendant, the Plaintiffs should be granted judgment that includes actual damages and punitive damages, and the costs of this action, all in an amount to be determined by the trier of fact.

## FOR A FOURTH CAUSE OF ACTION

### (Violation of RESPA)

46. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent herewith.

47. The loan at issue herein is secured with a mortgage placed on a one-to-four family residential property, and is federally-related for purposes of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, et. seq.

48. The mortgage loan transaction between the parties is covered by The Real Estate Settlement Procedures Act.

49. Prior to the institution of this action, Plaintiff contacted Defendant in

29. In addition to the damages found to exist by the Bankruptcy Court, Plaintiff has suffered other damages as a direct and proximate result of Defendant's inexcusable and contemptible delay, including health problems, the continued decay of her home, and repair costs that are now greatly in excess of what originally would have been required.

30. Additionally, both the Plaintiff and her son, James, have lost a significant amount of personal property as a direct and proximate result of Defendant's delay.

## FOR A FIRST CAUSE OF ACTION

### (Negligence)

31. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

32. The Defendant owed Plaintiffs a duty to exercise due care.

33. The Defendant breached the duty to Plaintiffs in the above particulars, and in such other particulars as may be shown at trial.

34. The breach of duty by Defendant was in conscious, reckless disregard of the rights of the Plaintiffs.

35. As a direct and proximate result of the aforesaid negligent, careless, reckless, willful and wanton acts and omissions of the Defendant, judgment should be granted to Plaintiffs for both actual and punitive damages.

writing, concerning the above problems, and advised Defendant repeatedly of the nature of the problem.

50. Defendant failed to acknowledge the writing of Plaintiff or her counsel in writing within 20 days, as required by law and/or failed to resolve the complaint by correcting the account or giving a statement of the reasons for its position, within 60 days, as required by law.

51. The actions (or inaction) of Defendant constitute violations of Section 6 of RESPA. Due to this failure to comply, or to assist Plaintiffs in any meaningful way, this action is instituted for actual damages, costs, and attorney's fees, and to require the correction of the account at issue herein.

52. Further, upon information and belief, the acts of Defendant herein are representative of a pattern of noncompliance with RESPA, thus entitling Plaintiffs to additional and/or enhanced damages.

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiffs is for judgment in an amount sufficient to compensate them for actual damages, together with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

TROTTER & MAXFIELD, ATTORNEYS

By: *Dave Maxfield*
Dave Maxfield, Esquire
1701 Richland Street
Columbia, South Carolina
(803) 799-6000

DATED: September 16, 2008